```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
YOUNES EL SALEH, pro se,                      :
                                              :
                        Petitioner,           :
                                              :           OPINION AND ORDER
            -against-                         :           13-CV-1567 (DLI)
                                              :
UNITED STATES OF AMERICA,                     :
                                              :
                        Respondent.           :
---------------------------------------------------------- x
```

**DORA L. IRIZARRY, Chief Judge:**

On March 20, 2013, Younes El Saleh ("Petitioner"), proceeding *pro se*,[1] filed the instant petition for writ of habeas corpus challenging his conviction pursuant to 28 U.S.C. § 2255. *See* Petitioner's Motion to Vacate, Set Aside or Correct Sentence ("Ptr. Mot."), Dkt. Entry No. 1. For the reasons stated below, the petition is denied in its entirety.

## BACKGROUND

### I. Indictment and Pre-Plea Proceedings

On April 9, 2010, a grand jury returned a two-count indictment, charging Petitioner with: (1) conspiracy to launder the proceeds of counterfeit clothing trafficking in violation of 18 U.S.C. § 1956(h) (Count One); and (2) counterfeit clothing trafficking in violation of 18 U.S.C. § 2320(a) (Count Two). Superseding Indictment, Dkt. No. 10-CR-120,[2] Dkt. Entry No. 54 at ¶¶ 1-2. Petitioner was initially represented by retained counsel, Martin Schmukler ("Schmukler"). *See*

---

[1] In reviewing the petition, the court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the court interprets the petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

[2] All references to "Dkt. No. 10-CR-120" are to the criminal case underlying the instant petition.

1

Notice of Appearance, Dkt. No. 10-CR-120, Dkt. Entry No. 8. The government discovered that Schmukler represented a defendant who cooperated with the government against Petitioner, and on April 12, 2010, moved to disqualify Schmukler because of the conflict of interest. *See* Letter dated April 12, 2010, Dkt. No. 10-CR-120, Dkt. Entry No. 70. By letter dated April 22, 2010, Schmukler responded to the government's motion to disqualify him, stating that Petitioner was "resolute and steadfast in his desire to have [Schmukler's] continued representation." Dkt. No. 10-CR-120, Dkt. Entry No. 72. On April 30, 2010, the Court conducted a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), and relieved Schmukler as Petitioner's counsel for a non-waivable conflict of interest. Dkt. No. 10-CR-120, Dkt. Entry No. 74. Petitioner himself spoke at the hearing and urged the Court not to disqualify Schmukler. On May 11, 2010, retained counsel Lawrence Herrmann ("Herrmann") appeared on behalf of Petitioner. Dkt. No. 10-CR-120, Dkt. Entry No. 79.

## II. Plea Agreement and Allocation

On September 7, 2010, Petitioner pled guilty to Count One before the Hon. Cheryl L. Pollak, United States Magistrate Judge, pursuant to a written plea agreement (the "Plea Agreement"). Plea Tr.[3] at 10-11, 14-15, Dkt. No. 10-CR-120, Dkt. Entry No. 128; Plea Agreement, Government's Memorandum in Opposition ("Gov't. Mem.,"), Ex. D, Dkt. Entry No. 5 at ¶ 1. Per the terms of the Plea Agreement, the parties stipulated to an estimated advisory United States Sentencing Guidelines ("USSG") sentence range of 70 to 87 months' imprisonment, based upon an adjusted offense level of 27 and a Criminal History Category I. Plea Agreement at ¶ 2. By entering into the Plea Agreement, Petitioner waived his right to appeal or to otherwise challenge

---

[3] "Plea Tr." refers to the transcript of Petitioner's guilty plea allocution before the magistrate judge on September 7, 2010.

his conviction pursuant to 28 U.S.C. § 2255, if the Court imposed a sentence of 97 months or less. *Id.* at ¶ 4.

During the plea allocution, Petitioner, under oath, confirmed that he had read the Plea Agreement or, that it had been read to him in his native Arabic. Plea Tr. at 14. Petitioner also advised the magistrate judge that he had discussed the Plea Agreement with his daughter and his attorney, and he understood its terms. *Id.* When the magistrate judge advised Petitioner that he could not appeal or otherwise challenge his conviction or sentence, if he received a sentence of 97 months or less, Petitioner affirmed that he understood. *Id.* at 20-21. The magistrate judge further confirmed Petitioner's understanding of the Plea Agreement:

> The Court: … Does this [Plea Agreement] reflect what you understand to be the agreement that you have with the government regarding this plea?
>
> [Petitioner]: Yes.
>
> The Court: Okay. Other than the promises that are set forth in the [Plea Agreement], has anyone made any other promise that caused you to plead guilty here?
>
> [Petitioner]: No.
>
> The Court: Has anyone made any promise to you as to what your sentence will be?
>
> [Petitioner]: No.

Plea Tr. at 15:3-14.

Later in the plea hearing, the magistrate judge again confirmed the following:

> The Court: … Has anyone threatened or forced you to plead guilty?
>
> [Petitioner]: No.
>
> The Court: Has anyone made any promise to you as to what your sentence will be?
>
> [Petitioner]: No.

*Id.* at 22:25-23:5.

3

Petitioner iterated in his own words that he was pleading guilty because he "deposited money in [another person's bank] account" to conceal the fact that he was trafficking in counterfeit clothing. *Id.* at 26. After further questioning from the magistrate judge, Petitioner further stated that he also used blank postal orders to conceal his illegal counterfeit clothing activities. *Id.* at 26-27. The magistrate judge found that Petitioner fully understood his rights and the consequences of his plea, was acting voluntarily, and there was a factual basis for the plea. *Id.* at 27-28. Accordingly, the magistrate judge recommended that this Court accept Petitioner's guilty plea. *Id.* at 28.

### III. Sentencing Hearing and Direct Appeal

On April 7, 2011, upon reviewing the transcript of Petitioner's guilty plea allocution, this Court adopted the magistrate judge's recommendation and accepted Petitioner's guilty plea. Order as to Younes El Saleh dated April 7, 2011, Dkt. No. 10-CR-120. On April 8, 2011, this Court sentenced Petitioner to 63 months of incarceration, followed by three years of supervised release. Judgment as to Younes El Saleh, Dkt. No. 10-CR-120, Dkt. Entry No. 234. On April 19, 2011, Petitioner timely filed a notice of appeal. Dkt. No. 10-CR-120, Dkt. Entry No. 233. On December 20, 2011, Herrmann filed a motion to be relieved as counsel. Dkt. No. 11-1547,[4] Dkt. Entry No. 54. On December 22, 2011, the appellate court granted Herrmann's motion to be relieved and designated petitioner as proceeding *pro se*. Dkt. No. 11-1547, Dkt. Entry No. 67.

On June 5, 2012, Petitioner filed his appellate brief, *pro se*, wherein he argued that he did not knowingly and voluntarily enter into the Plea Agreement because he did not understand one of the elements of "the crime to which he pled guilty." App. Br., Dkt. No. 11-1547, Dkt. Entry No. 118. at 4. Petitioner's theory on appeal was that, "the sale of counterfeit clothing" requires

---

[4] All references to Dkt. No. 11-1547 are to the appellate docket in the criminal case underlying the instant petition.

4

"an intent to deceive the customer that the counterfeit clothing [is] real," which intent Petitioner lacked. *Id.* at 5. Thus, according to Petitioner, the Plea Agreement's waiver was unenforceable, because he was unaware that "intent to deceive" was a necessary element of the crime of selling counterfeit clothing. *Id.* at 8. On December 27, 2012, the appellate court dismissed Petitioner's appeal because he had not "demonstrated that the waiver of his appellate rights is unenforceable under *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000)." Dkt. No. 10-CR-120, Dkt Entry No. 439. Petitioner did not file a petition for a writ of certiorari to the United States Supreme Court. *See generally*, Dkt. No. 10-CR-120.

## IV. The § 2255 Motion

Petitioner timely filed this habeas petition, which is organized broadly into two main argument sections. Ptr. Mot. at 6-16. Petitioner first argues that he received ineffective assistance of counsel for the following six reasons: (1) his attorneys labored under a conflict of interest (*Id.* at 6-7); (2) his attorneys failed to notice the "intent to deceive" issue raised in Petitioner's appellate brief (*Id.* at 8-9); (3) Herrmann failed to retain an expert to contest the government's valuation of the counterfeit clothing (*Id.* at 9); (4) Herrmann failed to inform the Court of certain mitigating factors at sentencing (*Id.* at 9-10); (5) Herrmann failed to object to the fact that the sentence imposed was disproportionate to sentences received by similarly situated co-defendants (*Id.* at 10-11); and (6) his attorneys falsely promised that his sentence would not be greater than two years (*Id.* at 11-12). Petitioner's second argument is that he did not enter a voluntary, knowing, and intelligent guilty plea because he was not informed during the plea colloquy that an "intent to deceive" is an element of the crime to which he pleaded guilty. *Id.* at 14.

**DISCUSSION**

**I.     Procedural Bar for Failure to Raise Claims on Direct Appeal**

The government argues that most of Petitioner's claims are procedurally barred because he did not raise these claims on direct appeal. Gov't Mem. at 14 (quoting *Bousley v. United States*, 523 U.S. 614, 621 (1998)). The only claim Petitioner pursued on direct appeal was that the waiver is unenforceable because at the time he entered the Plea Agreement, he did not know that "intent to deceive" is an element of counterfeit clothing trafficking. Thus, according to the government, this is the only claim Petitioner preserved for habeas review, and the remainder of Petitioner's claims are procedurally barred. *Id.* The government's analysis is flawed.

The government is correct that, as a general rule, "if a petitioner fails to assert a claim on direct review, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish" cause for the default or actual innocence. *De Jesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1998) (citing *Bousley v. United States*, 523 U.S. at 622)). However, in *Massaro v. United States*, 538 U.S. 500 (2003), the Supreme Court announced an exception to this rule: "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Id.* at 504. Petitioner's first argument in this habeas proceeding is that he received ineffective assistance of counsel. Thus, under *Massaro*, Petitioner's failure to raise this issue on appeal does not foreclose its consideration here.[5] As for Petitioner's second argument, it is premised on the same "intent to deceive" theory asserted in his appellate brief. Therefore, as even the government concedes, Petitioner preserved this argument for habeas review.

---

[5] However, Petitioner's ineffective assistance of counsel claim may be foreclosed for other reasons, such as the waiver contained in the Plea Agreement, as discussed immediately below.

**II.     Ineffective Assistance of Counsel and the Enforceability of the Plea Agreement**

The government argues that, pursuant to the Plea Agreement, Petitioner agreed not to collaterally challenge his conviction or sentence as long as the sentence imposed was 97 months or less. Gov't. Mem. at 11. Because Petitioner received a sentence of 63 months, the government asserts that his habeas petition is procedurally barred. *Id.*

In the Second Circuit, plea agreements containing a waiver of the right to appeal or bring a collateral challenge under § 2255 are generally enforceable.[6] *Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001). However, a defendant cannot be bound by an appeal waiver if the decision to enter a plea agreement was the product of counsel's ineffective assistance. *United States v. Hernandez*, 242 F.3d 110, 114 (2d Cir. 2001) (citing *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir.1998) (per curiam)). "The rationale is that 'the very product of the alleged ineffectiveness' cannot fairly be used to bar a claim of ineffective assistance of counsel." *Id.* (quoting *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir.1999)). Thus, where an attorney's ineffective assistance caused a defendant to agree to a waiver, a court must look past the waiver and examine the underlying merits of the ineffective assistance claim. *See Cross* 823 F. Supp. 2d at 152 (invalidating an appeal waiver where the defendant alleged it was procured through ineffective assistance of counsel).

The issue that often arises in this context is whether an ineffective assistance claim necessarily invalidates an appeal waiver in all cases. In *Yushuvayev v. United States*, 532 F. Supp. 2d 455, 469 (E.D.N.Y. 2008), the court summarized the conundrum as such:

---

[6] Such waivers, in which a defendant foregoes both the right to appeal and the right to bring a § 2255 action, are commonly referred to an "appeal waiver." *See, e.g., Cross v. Perez*, 823 F. Supp. 2d 142, 161 n.4 (E.D.N.Y. 2011) (using "the term 'appeal waiver' as a shorthand reference that includes a waiver of both direct appeal and collateral proceedings").

> [O]n one hand, rigid enforcement of the waiver rule would make ineffective assistance in advising a criminal defendant to enter into a plea agreement effectively unreviewable, while disregarding the waiver agreement entirely in cases of alleged ineffective assistance would open the door to "obvious [ ] circumvention of a plea agreement," permitting defendants to cast any purported defect in the underlying criminal proceeding as a matter of ineffective assistance not encompassed by the waiver provision.

*Id.* (quoting *United States v. Pipitone,* 67 F.3d 34 (2d Cir.1995) (alternation in original)).

The Second Circuit addressed this issue most recently in *Parisi v. United States*, 529 F.3d 134 (2d Cir. 2008), where the defendant was convicted and sentenced pursuant to a written plea agreement and plea waiver. *Id.* at 137. Despite the waiver, the defendant filed a habeas petition, alleging that his counsel's failure to raise a Speedy Trial Act claim amounted to ineffective assistance. *Id.* The district court found that the defendant's habeas petition was barred by the waiver because the defendant had "not explained how his attorney's failure to raise a Speedy Trial Act claim affected his decision to plead guilty." *Id.* On appeal, the defendant attempted to connect his attorney's ineffectiveness to the plea agreement by arguing that, but for his attorney's failure to raise a Speedy Trial Act claim, the indictment would have been dismissed and there would have been no plea agreement at all. *Id.* at 138.

The Second Circuit rejected the defendant's argument. *Id.* Relying in part on *Hernandez*, the court found that "challenging the ineffectiveness of counsel in connection with a plea agreement" requires a defendant to challenge "'the constitutionality of the *process* by which he waived his right to appeal.'" *Id.* (quoting *Hernandez*, 242 F.3d at 113 (emphasis in *Parisi*) (alternations omitted)). *Parisi* also quoted *Frederick v. Warden*, 308 F.3d 192 (2d Cir. 2002) for the proposition that, in the appellate waiver context, an ineffective assistance of counsel challenge requires "'an attack on the validity of the *process* by which the waiver has been procured.'" *Parisi*, 529 F.3d at 138 (quoting *Frederick*, 308 F.3d at 195 (emphasis in *Parisi*)). The defendant in *Parisi*

8

complained that his attorney was ineffective because he failed to secure dismissal of the charges before the plea negotiations had even begun. *Id.* But by focusing on events that occurred "prior to the plea negotiation rather than the negotiation itself," the defendant's argument failed to show that his attorney's ineffectiveness corrupted the process that produced the waiver. *Id. Parisi* further explained:

> An ineffective assistance of counsel claim survives the guilty plea or the appeal waiver only where the claim concerns the advice the defendant received from counsel. Thus, although challenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, challenging the attorney's *advice* about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does. Otherwise, if a purported failure to enhance the defendant's case were sufficient by itself to overcome an appeal waiver, many ineffective assistance claims would be cognizable despite the guilty plea and notwithstanding the waiver.

*Id.* at 138-39 (emphasis in original) (internal citations and quotation marks omitted).

Despite this rationale, and the "weakness" of the defendant's argument, the Circuit construed the defendant's claim as broadly as possible in light of his *pro se* status before the district court and on appeal. *Id.* at 139. Applying this deferential standard, the court interpreted the defendant's argument as alleging that his attorney was ineffective for misadvising him on the plea agreement rather than for failing to dismiss the indictment on Speedy Trial Act grounds. *Id.* Accordingly, the court found that the defendant had established a sufficient connection between his attorney's alleged ineffectiveness and the process through which the defendant agreed to the waiver. *Id.*

One court in this District has interpreted *Parisi's* outcome as imposing a "connectivity" standard that is so broad, no waiver can survive an ineffective assistance of counsel claim. *Cross*, 823 F. Supp. 2d at 152. In *Cross*, the court noted that, "[i]f a Court can simply infer, as the *Parisi* Court did," a connection between an attorney's purported errors and the plea bargaining process,

9

regardless of what the petitioner actually alleges, then "the waiver will drop out of almost any case in which an ineffective assistance claim is raised, and the habeas court may as well proceed directly to the *Strickland* claim with little more than a passing glance at the waiver." *Id.* In other words, if *Parisi* could infer, based on its facts, the requisite connection between the claimed ineffectiveness and the waiver procurement process, then the connection can always be inferred, and waivers are *per se* invalid in this context.

This Court joins *Cross* in finding it difficult to reconcile the outcome of *Parisi* with its rationale. However, this Court does not read *Parisi* to stand for the proposition that a talismanic invocation of ineffective assistance of counsel obliges a court to look behind an appeal waiver. To construe *Parisi* in this manner renders it a nullity, and effectively overrules *Hernandez* and *Frederick sub silentio*. To the extent *Cross* interprets *Parisi* as having such a sweeping effect, this Court respectfully disagrees. *Parisi*, *Hernandez*, and *Frederick* all draw a clear distinction between ineffective assistance claims that affect the plea agreement process, on the one hand, and those that do not, on the other. *Parisi*, 529 F.3d at 138 ("Parisi's argument misses the point because it focuses on pre-plea events rather than the plea agreement process."); *Hernandez*, 242 F.3d at 114 ("Of course, the refusal to apply … a waiver provision in these circumstances only allows appellate review of the constitutionality of the process by which the plea agreement was consummated."); *Frederick*, 308 F.3d at 196 ("*[T]o the extent* the present petition contests the constitutionality of the process by which appellant's claim of a defective plea agreement was twice denied, the waiver does not apply.") (emphasis added). If it is true that "[v]irtually all of the Second Circuit cases reject a waiver where the defendant attacks the 'process,'" then it must be equally true that the Circuit condones acceptance of a waiver where the defendant *fails* to challenge the process. *Cross*, 823 F. Supp. 2d at 152. Perhaps the most that can be said of the outcome in

*Parisi* is that the "breadth of the definition of 'process,'" as well as the strength of the "connectivity" between the process and the ineffectiveness claim, are questions that district courts must address on a case-by-case basis. *Id.*

Here, Petitioner claims that his attorney rendered constitutionally ineffective assistance in six different ways. In his third, fourth, and fifth arguments, Petitioner alleges that his counsel was ineffective in connection with sentencing. Because any ineffective performance that occurred during sentencing did not affect the process by which Petitioner entered the plea agreement, these claims are barred by the appeal waiver. *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998) ("[Defendant] claims that his waiver should not bar consideration of his appeal because counsel was ineffective not at the time of the plea, but at sentencing. We emphatically reject this contention."); *United States v. Jimenez*, 106 F. App'x 92, 93 (2d Cir. 2004) (summary order) (citing *United States v. Monzon*, 359 F.3d 110, 118 (2d Cir. 2004) ("[A] claim of ineffective assistance is waived when ... it attacks the sentence itself and not the underlying plea agreement that supported the sentence.")).

In his first argument, Petitioner alleges that his original counsel, Schmukler, was ineffective because he labored under a conflict of interest. Petitioner does not claim that Schmukler's alleged conflict affected the process by which Petitioner consented to the Plea Agreement. Indeed, it is particularly difficult to connect Schmukler's conflict with the Plea Agreement, given that the government did not even extend the plea *offer* until three weeks after the Court relieved Schmukler as Petitioner's counsel. Accordingly, Petitioner's ineffective assistance of counsel claim against Schmukler is deemed waived.

Petitioner alleges, in passing, that Herrmann also labored under a conflict of interest, and, therefore, was ineffective. Ptr. Mem. at 7 ("Both counsels labored under [a] conflict of

11

interest…."). However, like his allegations against Schmukler, Petitioner's conflict claims against Herrmann are in no way connected to the Plea Agreement process. Petitioner makes no attempt to explain how one relates to the other, and, even under *Parisi's* generous *pro se* standard, the Court cannot divine any such connection. Thus, this argument is waived as to Herrmann, and the Court declines to analyze the underlying conflict of interest claim.

In his second argument, Petitioner states that his attorneys failed to identify the "intent to deceive" issue, and as a result, failed to secure dismissal of Count Two of the Indictment. Petitioner does not explain how or whether this failure affected the plea negotiation process, and under the rationale of *Parisi*, the Court would have easily disposed of the argument as covered by the waiver. However, ineffective assistance of counsel based on a failure to have a count of an indictment dismissed is precisely the argument that the defendant in *Parisi* raised. Nevertheless, despite this factual similarity, the Court reads the outcome of *Parisi* as limited to its facts. Moreover, as noted above, *Parisi* does not limit the discretion of a district court to determine whether any particular ineffective assistance of counsel claim is sufficiently connected to the plea agreement process. Because the Court finds that, in this instance, Petitioner's claim is not tied to the process, it is deemed waived.

Petitioner's final argument is that his attorney provided ineffective assistance because he "coerced [Petitioner] into pleading guilty with the promise that he [would] only receive a two-year[] sentence." Ptr. Mot. at 11-12. As this argument clearly relates to the plea agreement process, the Court will consider its merits.

Petitioner claims that both Schmukler and Herrmann promised Petitioner that if he signed "this deal," they would ensure that Petitioner only received a two-year sentence. *Id.* at 11. In a sworn declaration in support of his brief, Petitioner avers that Herrmann advised him to answer

"yes" to "whatever the judge asked" and "not to oppose any of the prosecutor['s] remarks or statements."[7] Ptr. Mot, Ex. 2. Petitioner further asserts in his declaration that Herrmann advised that he had "a personal relationship with the judge." *Id.* However, in his habeas brief, Petitioner states that it was Schmukler who told Petitioner that he was "very close to the judges and prosecutors." *Id.* at 11. Petitioner's wife also submitted a sworn declaration in which she asserts that both attorneys promised Petitioner, in her presence, that Petitioner would receive a two-year sentence. *Id.*, Ex. 1. In response, Herrmann submitted an affidavit in which he claims that the allegations of Petitioner and his wife are "false." Gov't. Mem., Ex. B, at ¶ 7. Herrmann further avers that he never promised either Petitioner or his wife a specific sentence of two years, and he never told Petitioner to answer "yes" to all of the judge's questions. *Id.* at ¶¶ 7-10, 18.

The Court must evaluate Petitioner's claim of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 687-88. Under this first prong, a "guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not a reasonably competent attorney and the advice was not within the range of competence demanded of attorneys in criminal cases." *Id.* at 687. Second, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A "reasonable probability" of a different result is a "probability sufficient to undermine confidence in the outcome." *Id.* Under the second prong, a defendant who has pled guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty

---

[7] Petitioner does not state whether this advice was given in connection with the guilty plea allocution or the sentencing hearing.

13

and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Petitioner bears the burden of satisfying both prongs of *Strickland*. *United States v. Birkin*, 366 F. 3d 95, 100 (2d Cir. 2004) (citing *Id.*).

Courts routinely dismiss, without a hearing, habeas petitions alleging ineffective assistance of counsel where a petitioner's claims are contradicted by an attorney's affidavit. *See e.g. Chang*, 250 F.3d 79, 85 (2d Cir. 2001) (affirming district court's decision to dismiss without a hearing a § 2255 petition alleging ineffective assistance of counsel where "the record was supplemented by a detailed affidavit from trial counsel credibly" refuting the petitioner's claim that he was "prohibited" from testifying). In fact, while an attorney affidavit may be sufficient to reject a habeas petition without an evidentiary hearing, one is not always necessary. *Reese-Thomas v. United States*, 2007 WL 4441056, at *8 (E.D.N.Y. Dec. 18, 2007). Even where counsel fails to submit an affidavit, there is "no need to convene an evidentiary hearing" where "all of the circumstances of the case impeach the [petitioner's] claim[s]." *Id.*

Here, Petitioner merely submits the unadorned assertion that Herrmann and Schmukler promised him a two-year sentence. In a transparent attempt to prop up his claim, Petitioner scurrilously accuses these attorneys of promising to exploit their "personal relationship" with either this Court or the magistrate judge for Petitioner's benefit. Herrmann's affidavit to the contrary is detailed, credible, and more than sufficient to overcome Petitioner's baseless accusations.

Even without Herrmann's affidavit, Petitioner's claim fails because it flatly is contradicted by his own words. The magistrate judge twice asked Petitioner, who was under oath, if anyone

had promised him what his sentence would be, and both times he responded "no." The magistrate judge explained to Petitioner that, until sentencing, "no one can promise you exactly what your sentence will be; *not Mr. Herrmann*, not the Government's attorney, not me, not even Judge Irizarry until that time." (emphasis added). The Petitioner replied that he understood this. Accordingly, the Court lends no credence to his eleventh hour claim that his attorneys falsely promised to secure him a two-year sentence.

Moreover, in assessing the credibility of Petitioner's claim here, the Court is not required to ignore the utterly fantastic assertions Petitioner makes elsewhere in the habeas petition, such as that he was prejudiced by Schmukler's conflict of interest. Petitioner himself voluntarily retained Schmukler, and then strenuously objected when the government sought to disqualify him for a conflict of interest. Additionally, according to Herrmann's affidavit, even after the Court relieved Schmukler, Petitioner continued to consult him on all aspects of his case. Petitioner cannot voluntarily engage Schmukler after he was relieved for a non-waivable conflict of interest, and then turn around and complain, under oath, that he was prejudiced by Schmukler's conflict of interest. If there was any prejudice as a result of Schmukler's involvement in this case it was entirely crafted by Petitioner, who should not be permitted to benefit from his own devious machinations. For this, and the other foregoing reasons, the Court finds his claim that he was falsely promised a two-year sentence similarly untruthful. Accordingly, because there is no evidence that "counsel's representation fell below an objective standard of reasonableness," Petitioner's claim does not satisfy the first prong of *Strickland*, and the Court need not reach the second prong.

### III. Petitioner's Guilty Plea Was Knowingly, Voluntarily, and Intelligently Made

Petitioner's second general argument is that the plea allocation was deficient because he did not understand the nature of the charge he faced. Petitioner's argument rests on his theory that he was never informed, by counsel or the magistrate judge, that "deception" is a necessary element of the crime to which he pled guilty. Petitioner also claims that the magistrate judge failed to ensure that he understood the consequences of his plea, and that there was a sufficient factual basis for his guilty plea. In essence, stripped of its repetitiveness and frivolous accusations,[8] the strongest possible arguments Petitioner raises are that: (i) the allocution failed to comply with Federal Rule of Criminal Procedure 11(b),[9] and (ii), his plea was not knowing, voluntary, and intelligent because he did not understand the elements of conspiracy to commit money laundering.

As a threshold matter, even a valid appeal wavier cannot preclude a defendant from "'contend[ing] that there were errors in the proceedings that led to the acceptance of his plea of guilty'" or "that the district court failed to satisfy the requirement that there is a factual basis for the plea." *United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006) (quoting *United States v. Maher*, 108 F.3d 1513, 1528–29 (2d Cir.1997)). Thus, Petitioner's argument that his guilty plea

---

[8] For example, Petitioner claims that he spoke to the magistrate judge "without an interpreter," when the record shows that an interpreter was used throughout the allocation, despite the fact that Petitioner speaks and understands English. *See* Plea Tr. at 3:15-4:13.

[9] Specifically, Rule 11(b)(1)(G) requires a court to "inform the defendant of, and determine that the defendant understands … the nature of each charge to which the defendant is pleading[.]" Rule 11(b)(3) requires a court to "determine that there is a factual basis for the plea." *See also United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006) (citing *Bradshaw v. Stumpf*, 545 U.S. 175, 182 (2005) ("[I]n all circumstances … the judge must follow the detailed procedures set forth in Fed.R.Crim.P. 11(b) for the taking and accepting of guilty pleas."); *see also United States v. Zea*, 2016 WL 4578749, at *2 (2d Cir. Sept. 1, 2016) (quoting *United States v. Pattee*, 820 F.3d 496, 503 (2d Cir. 2016) (internal quotation marks omitted) ("We have adopted a standard of strict adherence to Rule 11. . . .")).

was not knowing, voluntary, and intelligent because of the supposed errors in the plea allocution is not barred by the Plea Agreement. Nevertheless, it fails on the merits.

A guilty plea "is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw*, 545 U.S. at 182 (quoting *Brady v. United States*, 397 U.S. 742, 748)). A defendant's decision to enter a plea of guilty must "represent[] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal citations omitted). While a defendant must be informed of all of the elements of the crime to which the defendant will plead guilty, the judge need not explain each of the crime's elements on the record. *Bradshaw*, 545 U.S. at 183. "Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." *Id.* (citing *Henderson v. Morgan,* 426 U.S. 637, 647 (1976)).

Here, the record of the plea allocution amply demonstrates the magistrate judge's compliance with the relevant portions of Rule 11(b). As to the nature of the charge, the record shows that the magistrate judge explained, what a conspiracy is, and Petitioner replied that he understood. The magistrate judge then explained that Petitioner was "charged with engaging in money laundering activities in order to conceal your relationship to this money or property that was the result of trafficking counterfeit goods." Again, Petitioner affirmed that he understood. Petitioner also confirmed that he had received a copy of the indictment, and that he had discussed Count One of the indictment with Herrmann. This is more than sufficient to satisfy Rule 11(b)'s requirement that Petitioner understood the "nature of the charge." Moreover, this portion of the record satisfactory demonstrates that he was informed of all the elements of section 1956(h).

Petitioner's argument that there was not a sufficient factual basis for his guilty plea similarly is without merit. Petitioner stated that he sold "counterfeit stuff," and that he "deposited money in [another person's] account" to conceal the fact that he was dealing in counterfeit clothing. He also stated that he used blank money orders so that customers' names would not be associated with illegal clothing activity. The government also described, in detail, the various methods through which Petitioner laundered the illicit proceeds. After equivocating on some of the government's contentions, Petitioner ultimately confirmed the legally relevant portions of government's account of the money laundering schemes. The record reflects a factual basis for Petitioner's plea.

Finally, Petitioner's "intent to deceive" argument is meritless and does not warrant extended discussion. In summary, Petitioner claims that he did not commit counterfeit clothing trafficking because his customers were aware they were purchasing counterfeit clothes. He further alleges that at the time he pled guilty, he did not know that an "intent to deceive" was an essential element of counterfeit clothing trafficking, which was the "underlying predicate act" to the money laundering charge.

First, Petitioner pled guilty to money laundering, not counterfeit clothing trafficking. Petitioner's argument appears to rest on the assumption that the government needed to prove Petitioner engaged in counterfeit clothing trafficking as a condition precedent to obtaining a conviction for money laundering. This is false. The government was only required to show that the proceeds were derived from illicit activity and that Petitioner was aware of this fact; the government was not required to prove Petitioner himself engaged in counterfeit clothing trafficking, as Petitioner seems to suggest. Thus, even if Petitioner had not engaged in counterfeit clothing trafficking, he still believed the proceeds were derived from illegal activity, which is why

he sought to conceal their source. Petitioner admitted as much on the record, so his conviction on Count One is valid.

Second, an intent to deceive the purchaser of a counterfeit product is not an element of trafficking in counterfeit goods. Where the government has otherwise satisfied the elements of § 2320, "a requirement that confusion among actual or potential purchasers be shown is unnecessary." *United States v. Hon*, 904 F.2d 803, 808 (2d Cir. 1990). Therefore, to the extent the elements of Count Two are even relevant to his guilty plea under Count One, Petitioner's interpretation of those elements is erroneous. Accordingly, Petitioner's motion is denied on this ground as well.

## CONCLUSION

For the foregoing reasons, Petitioner's motion is dismissed with prejudice. Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
September 9, 2016

/s/
DORA L. IRIZARRY
Chief Judge